## Case No. 5,306.

### Ex parte GENERAL ASSIGNEE.

[1 N. Y. Leg. Obs. 131.]

District Court, S. D. New York. 1842.

BANKRUPTCY—ASSETS—VAULT IN CEMETERY.

A bankrupt was possessed of one-half of a vault held by him by virtue of a certificate from the New York Marble Cemetery Company. By the 2d section of the state statute, passed 26th April, 1832 [Laws N. Y. 1832, p. 551], incorporating the company, it is enacted: "That the said cemetery shall and may at all times hereafter be used and appropriated for the interment of the dead, and for no other use or purpose whatever. The said vaults shall be deemed personal property, and shall not in case where not more than one of them is owned by the same person or persons, be liable to taxation or sale on execution, or to be inventoried as assets applicable to the payment of debts." *Held*, that the act of the state sanctioned the dedication of a corporate franchise to a pious use: that the bankrupt's interest in the vault could not be reached by creditors, and, therefore, that it did not pass to the general assignee.

This was a case submitted to the court on the report of the assignee [in the matter of Abner S. Ely, a bankrupt].

BETTS, District Judge. The general assignee files his report stating that the bankrupt refuses to deliver up to the assignee a certificate of title to one-half a burying vault owned by him. The bankrupt, on Schedule B, describes his interest in this vault as follows: "The undivided one-half part of vault No. 72, in the New York City Marble Cemetery, an incorporated institution by law, under a certificate in my possession dated the first day of January, 1835, to John and Abner S. Ely, under the seal of the said corporation, signed, &c. for the consideration of $250, one-half of which was paid by me, and the other by said John Ely. Some of the relations of the petitioner are buried in said vault." The assignee moves the court for an order that the petitioner deliver up that evidence of his title to the property. The motion is opposed on the part of the bankrupt.

The legislature of the state of New York, by an act passed April 26, 1832 [Laws N. Y. 1832, p. 551], granted the incorporation referred to. The first section declares: "That the owners and proprietors of vaults in that cemetery shall be a body corporate and politic," &c. &c. The second section is: "That the said cemetery shall and may at all times hereafter be used and appropriated for the interment of the dead, and for no other use or purpose whatever. The said vaults shall be deemed personal property, and shall not, in case where not more than one of them is owned by the same person or persons, be liable to taxation or sale on execution, or to be inventoried as assets applicable to the payment of debts, but every such vault may be bequeathed by last will and testament; and in case of intestacy, shall belong to the next of kin of the deceased," &c. The residue of the section has no bearing upon the question before the court. The third section of the bankrupt act [of 1841 (5 Stat. 442)] vests in the assignee "all the property and rights of property of every name and nature," and whether real, personal or mixed, "of the bankrupt," and such broad assignment of

the estate, it is supposed, overrides all limitations or privileges created by the local law which may be connected with the enjoyment of property. That point, however, is not, in my opinion, necessarily raised in this case. If it be conceded that a fixed legal or equitable interest of a bankrupt in any species of property must pass to his assignee, by force of the act of congress, notwithstanding any immunity or qualification attached to the ownership or use of such property, by a state law, still that rule would be restricted to particulars which are valuable in themselves, and the right to which may be communicated or assigned to others. It may well be that the bankrupt law operates over and beyond state laws of exemption or personal privilege, so that property not liable to assessment, execution or distress within a state, may vest in the assignee of a bankrupt, but that is because there is an interest or estate of the bankrupt created or produced by the state law, but having its existence by common right, and under the general rules of property. As, for instance, a state law declaring that any part of a man's real estate which he shall set apart and appropriate for a burial place for his own family or relatives, shall be held exempt from execution, or clear from his creditors forever thereafter, might not secure it to a bankrupt against his assignee, or impede the application of the law of congress, because both laws operating upon a right and interest existing independent of either, the state law should not control the action of the United States statute over the subject.

It appears to me a clear distinction lies in respect to interests or rights created and conferred by express law; and that in such case the interest is nothing more than such law generates or declares. If there may be embarrassment in framing a general rule explicit enough to mark with clearness those classes of interests which are properly of this dependent and imperfect character, yet there can be little or none in determining that the one now under consideration is of that quality. The act of the state sanctions the dedication of a corporate franchise to a pious and touching use, and applies to it the denomination of "personal property," but in imparting existence to this franchise, the law withheld from it those attributes essential to characterize it "property." It can only be enjoyed for the interment of the dead; it cannot be reached by private creditors nor for public dues. It is then no more than a license to the petitioner to hold personally the privilege of sepulchre for his friends, and to bequeath such privilege on his own decease, and if he fails making a will, to have it still continue to his family, in a single vault; and as the language and spirit of the statute giving existence to this right, denote beyond all doubt the purpose to be to separate this acquisition from the estate or property of the holder, or to regard it as dedicated to a humane and pious purpose, one which public sentiment and policy, harmonizing with every feeling of private sympathy, sustain and consecrate, I shall therefore decide, that the interest of the bankrupt in this vault does not pass to the assignee, and the motion to deliver over the evidence of title is accordingly denied.